**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| CRAIG JORDAN, Individually and as Representative of a Class of Participants and Beneficiaries on Behalf of the Tenet Employee Benefit Plan,<br><br>*Plaintiff*,<br><br>v.<br><br>TENET HEALTHCARE CORPORATION and TENET BENEFITS ADMINISTRATION COMMITTEE,<br><br>*Defendants*. | CLASS ACTION COMPLAINT<br><br>Case No.: 3:26-cv-03620 |

## CLASS ACTION COMPLAINT

Plaintiff Craig Jordan ("Plaintiff"), individually and on behalf of the Class of participants and beneficiaries in the Tenet Employee Benefit Plan (the "Plan" or "TEBP"), as defined below, alleges the following against Tenet Healthcare Corporation ("Tenet") and the Tenet Benefits Administration Committee (the "Committee") (collectively, "Defendants"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel, documents produced by the Plan in response to a request under ERISA § 104(b)(4), and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is unlawful for entities like Tenet to impose punitive health insurance surcharges on employees who use tobacco products.

2. This lawsuit challenges Defendants' practice of charging a "tobacco surcharge" that unjustly forces certain employees to pay higher premiums for the health insurance provided by Tenet. Such surcharges violate the Employee Retirement Income Security Act ("ERISA") of 1974

and its anti-discrimination provisions by unfairly targeting employees based on their health status, such as tobacco use.

3. From 2019 through 2023, Plaintiff was required to pay tobacco surcharge penalties in order to maintain health insurance coverage under the Tenet-sponsored health plan. The surcharge—$25.00 per pay period, approximately $650 per year—imposes an additional financial burden on Plaintiff and other similarly situated employees.

4. Tobacco surcharges have proliferated in recent years. But to be legal, they must strictly comply with the terms of ERISA, the Public Health Service Act ("PHSA"), and their implementing regulations.

5. Tenet's tobacco surcharge program fails to comply with the terms of ERISA and the PHSA and their implementing regulations. Tenet therefore cannot take advantage of the statutes' safe harbors, 29 U.S.C. § 1182(b)(2)(B) and 42 U.S.C. § 300gg-4(b)(2)(B). These tobacco surcharges are discriminatory, health-based surcharges in violation of the law and in violation of the ERISA fiduciary duties owed to Tenet Plan participants and beneficiaries.

6. ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health-status-related factor, including nicotine or tobacco use, unless that fee is part of a bona fide "wellness program." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

7. To qualify as a bona fide wellness program under ERISA, a company must offer a "reasonable alternative standard," by which a participant can receive the program's "full reward," that is, avoid the surcharge for the entire plan year (not just prospectively once the "reasonable alternative standard" has been completed). 42 U.S.C. § 300gg-4(j).

8. Moreover, to be a bona fide wellness program, a company must also provide notice that such a reasonable alternative exists for nicotine or tobacco users in every Plan communication discussing the premium differential, including contact information and a statement that the recommendations of participants' physicians will be accommodated. 42 U.S.C. § 300gg-4(j).

9. At present, and over the last six (6) or more years, Defendants have failed to include the proper notice in all Plan materials discussing the surcharge, including a notice of a reasonable alternative standard and the physician-accommodation statement. Tenet's participant-facing materials describe the tobacco surcharge and the increased premium contributions imposed on participants, but do not provide compliant notice of all the avenues by which participants can avoid the surcharge as expressly required by 45 C.F.R. § 146.121(f)(4)(v). This is not a minor technical failure. It is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that all participants have a fair and compliant opportunity to be treated the same as non-nicotine-users.

10. Throughout the Class Period before the 2026 Plan year, the Tenet Plan did not provide the required reasonable alternative standard. Even if it did, Defendants have failed to adequately notify employees in all plan communications about the availability of such an alternative that would enable employees to avoid the surcharge for the entire year. Consequently, Defendants' tobacco surcharge violates ERISA's anti-discrimination provisions by imposing additional costs on employees who use tobacco products without meeting the legal requirements for a bona fide wellness program.

11. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of

the same. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 704 (2025) (reaffirming the statute "place[s] on ERISA defendants the burden of proving [an] exemption's applicability.").

12. Because Defendants failed to comply with all the statutory and regulatory criteria needed to take advantage of ERISA's safe harbor, the nicotine / tobacco surcharge violates ERISA's anti-discrimination requirements. Its collection by Tenet was, and remains, unlawful.

13. Plaintiff brings this lawsuit individually and on behalf of all similarly situated Tenet Plan participants and beneficiaries, seeking to recover the unlawfully charged tobacco surcharges and to obtain plan-wide equitable relief to prevent Tenet from continuing to collect these improper fees in violation of ERISA. Under 29 U.S.C. §§ 1109 and 1132(a)(2), Defendants, as the fiduciaries of the Plan, have a legal obligation to act in the best interests of its participants and to comply with federal law. Plaintiff, on behalf of himself and the Tenet Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendants' ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

14. Plaintiff Craig Jordan is an individual citizen of the State of Indiana. Mr. Jordan was an employee of Tenet from March 2019 to April 2023, working at Desert Regional Medical Center, a Tenet hospital in Palm Springs, California, and was a participant in the Tenet Plan who paid the tobacco surcharge, which was taken directly from his paycheck each pay period, including during the Class Period (October 16, 2020, to the date of judgment).

15. Plaintiff was a participant in the Tenet Plan pursuant to 29 U.S.C. § 1002(7) during the Class Period.

16. Tenet is a Fortune 500 company and one of the largest investor-owned healthcare services companies in the United States, operating hospitals, ambulatory surgery centers, and other

sites of care across the country. Its corporate headquarters are located at 14201 Dallas Parkway, Dallas, Texas 75254.

17. At all times relevant to this lawsuit, Tenet sponsored, maintained, and managed the Tenet Plan, which was available to Tenet employees and their dependents. The Tenet Plan's medical benefit program is self-funded, meaning benefits are paid from participant contributions and Tenet contributions rather than through insurance.

18. At all times relevant to this lawsuit, the Committee acted as the Tenet Plan Administrator and named fiduciary, and Tenet exercised discretionary authority and control respecting the Plan and the tobacco surcharge program. Plaintiff currently lacks knowledge of the identities of the individual members of the Committee and the Plan's other individual fiduciaries. Following discovery, Plaintiff will amend the complaint to add the individual fiduciaries' names, as appropriate.

19. Public documents show the Tenet Plan had over 55,000 active participants as of the beginning of the 2024 plan year.

20. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION, VENUE, & EXHAUSTION

21. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

22. This Court has personal jurisdiction over Defendants because Tenet is headquartered in this District, the Committee administers the Plan in this District, and Plaintiff's

claims and the claims of all others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff and the Class in the State of Texas.

23. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because this is the District in which Tenet has its principal place of business and where a substantial portion of the statutory breach took place. Additionally, Defendants conduct business and can be found in this District, and the Tenet Plan is administered in this District.

24. The claims asserted on behalf of the Plan in this case fall outside the scope of any exhaustion language in the Plan.

25. Plaintiff's claims arise from statutory violations and fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts.

26. Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims for benefits have been denied, not where a participant or beneficiary brings suit on behalf of a Plan for statutory violations and breaches of fiduciary duty.

27. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA Plan. A participant's obligation—such as a requirement to exhaust administrative remedies—does not, by itself, bind the Plan.

28. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. The usual policy justifications for exhausting administrative remedies include allowing the Plan administrator to make an initial determination of the facts, allowing for judicial review and (where appropriate) deference. Those justifications do not exist here because courts will not defer to a Plan administrator's legal analysis and interpretation. Nor does any arbitration

agreement bar this action: the Plan's summary plan description describes only a voluntary, elective arbitration option for certain individual benefit claims, which a participant "will not be forced" to use, and which Plaintiff never elected; the Plan's formal plan document contains no arbitration provision at all.

## BACKGROUND

### I. ERISA'S PROHIBITION ON PREMIUM DISCRIMINATION AND THE NARROW WELLNESS PROGRAM EXCEPTION

29. As a baseline rule, ERISA and the PHSA prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health status-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

30. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

31. Under ERISA § 505, 29 U.S.C. § 1135, Congress instructed the Departments of Labor, Health and Human Services, and Treasury (the "Departments") to issue regulations operationalizing the prohibition against discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182, and PHSA § 2705, 42 U.S.C. § 300gg-4. This authority empowers the Departments to "prescribe such regulations as [they] find[]

necessary or appropriate to carry out the provisions of" Title I of ERISA. 29 U.S.C. § 1135. Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Departments' authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

32. In 2006, the Departments issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "Final Regulations"). Congress incorporated those regulations into the PHSA in 2010 and, therefore, the Departments published the Final Regulations to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159; *see also* 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4). These Final Regulations were approved and signed in 2013 to be effective January 1, 2014. Final Regulations, 33158.

33. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (*e.g.,* smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan

qualifies as a "program[] of health promotion and disease prevention" that satisfies all the necessary regulatory criteria. *See Cunningham v. Cornell Univ., supra.*

34. Compliance with the regulatory criteria is not optional. These criteria are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

35. Only by satisfying all of the regulatory criteria can employers ensure their plans are wellness programs and "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* As one court concluded, regarding an employer's obligation to satisfy the regulatory criteria in a tobacco surcharge case: "[a]ll means all … no matter how small the requirement may be." *Chirinian v. Travelers Co*., No. 24-cv-3956, 2025 U.S. Dist. LEXIS 144669, at *28 (D. Minn. July 29, 2025). A court in this Circuit recently agreed, denying dismissal of materially identical claims: ERISA's anti-discrimination rules "prohibit [employers] from imposing a tobacco surcharge, unless 'all of the [regulatory] requirements' of [the] outcome-based wellness program are 'satisfied.'" *Wilson v. Whole Food Mkt., Inc.*, No. 1:25-CV-00085-DAE, 2026 U.S. Dist. LEXIS 10099, at *13 (W.D. Tex. Jan. 20, 2026) (quoting 29 C.F.R. § 2590.702(f)(4)).

36. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) <u>Frequency of opportunity to qualify</u>: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: Penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c) Reasonable design: Programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." 29 C.F.R. § 2590.702(f)(4)(iv). This includes a requirement that "the program allows a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual who does not meet the initial standard…." *Id.*

(e) Notice requirement: "The plan must disclose in all plan materials describing the terms of the program the availability of other means of qualifying for the [full] reward." Final Regulations, 33159 (emphasis added).

37. For health-contingent wellness programs, the statute and Final Regulations require the notice be disclosed "in all plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4) (emphasis added). Plans that describe surcharges in

enrollment materials without including the required notice violate this rule and fail to qualify for the statutory safe harbor. The notice requirement states:

> **Notice of availability of reasonable alternative standard**. The plan or issuer ***must*** disclose in ***all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, ***the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated***. If plan materials merely mention that such a program is available, without describing its terms, this disclosure is not required. Sample language is provided in paragraph (f)(6) of this section, as well as in certain examples of this section.

29 C.F.R. § 2590.702(f)(4)(v) (emphases added).

38. The Departments explained that documents that merely "mention" a program, without describing its terms, need not include the notice. However, any plan materials that reference a premium differential based on tobacco use or other health-contingent standard must contain the required disclosure. Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure."). Thus, enrollment materials or benefit guides that reference higher premiums or surcharges based on tobacco use, but omit the required disclosure notice regarding a reasonable alternative standard, including omitting contact information and a statement that a participant's physician's recommendations will be accommodated, violate this rule.

39. These requirements prevent employers from including these disclosures in some plan materials while omitting them from other materials actually distributed to participants. Employers that include misleading and varying notices, and omit the required disclosures

altogether from most plan communications, run directly contrary to the Departments' guidance and fail to provide the notice necessary to make informed enrollment decisions.

40. Defendants impose a premium differential without providing the required notice disclosures in the participant-facing communications sent to participants.

## II. DEFENDANTS' TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE.

41. On its face, the Tenet tobacco surcharge violates ERISA because Defendants fail to comply with the statutory and regulatory notice requirements.

42. A plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health-status related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

43. Defendants' tobacco surcharge violates this provision. Plaintiff, and all others similarly situated, were required to pay an additional premium or contribution per year based on a "health status-related factor"—their use of tobacco products. *See Mueller v. United Surgical Partners Int'l, Inc.*, No. 3:25-CV-2934-S, 2026 U.S. Dist. LEXIS 164466, at *13-14 (N.D. Tex. July 23, 2026) (tobacco use is a health status-related factor under ERISA). Plaintiff, and all others similarly situated, were forced to pay the tobacco surcharge to remain insured under the Plan.

44. Specifically, Defendants impose an unlawful tobacco surcharge on employees who, or whose covered spouses, domestic partners, or dependents, are enrolled in the Tenet Plan's medical coverage and have used tobacco products within the applicable look-back period.

45. All U.S. benefits-eligible employees enrolled in Tenet medical coverage (and their covered spouses, domestic partners, and dependents, where applicable) who have used tobacco products pay higher rates under the Tenet Plan.

46. Tenet sometimes refers to this surcharge as a "Tobacco Surcharge" in its written materials, sometimes as a "Tobacco User Surcharge," and sometimes as a "tobacco rate." On information and belief, there is no substantive distinction among these terms.

47. Under the Tenet Plan, each enrolling employee must complete a "Tobacco Declaration" or tobacco attestation. Per Tenet's enrollment guide, if the employee and/or covered dependents "have used tobacco products (cigarettes, e-cigarettes, cigars, pipes, smokeless tobacco) within the last 12 weeks," the employee "will pay a surcharge every pay period for medical coverage." In other words, any individual who has used any type of tobacco product, regardless of the frequency (or infrequency) of the use, during the look-back period preceding enrollment must pay this surcharge of $25.00 per pay period—approximately $650 per year.

48. Tenet's more recent enrollment guides do not disclose the amount of the surcharge at all, telling employees only that they "may pay a surcharge every pay period for medical coverage." The amount has nonetheless remained $25.00 per pay period: enrollment confirmation statements generated by the Plan's enrollment system itemize, within the medical election, "Includes: Tobacco Surcharge: $25.00."

49. The surcharge is also concealed in participants' pay. The surcharge is combined with the employee's ordinary medical premium in a single payroll deduction; as the Plan's benefits personnel have confirmed in writing, the medical deduction and tobacco surcharge "amounts are combined." A surcharged employee's pay stub therefore shows only a single, generic medical deduction.

50. Tenet's enrollment guide further warned employees that if they did not complete the Tobacco Declaration, "tobacco-related claims could be denied in the future"—conditioning benefits themselves, and not merely premiums, on the disclosure of health status.

51. The status employees report remains in effect for the entire Plan year. Before the 2025 Plan year, Tenet's enrollment materials disclosed no means whatsoever of removing the surcharge; beginning with the 2025 Plan year, the enrollment guide stated only that a participant who first "stay[s] tobacco-free for three months" may "report to the Benefit Solutions Center to stop the surcharge"—relief that is prospective only and conditioned on the participant actually quitting. In other words, any relief from the tobacco surcharge is only prospective, and has a waiting period before it goes into effect. At no time before the 2026 Plan year did the completion of a tobacco cessation program—or any other alternative standard—remove or reduce the surcharge at all, whether prospectively or retroactively: completion of a cessation program alone had no effect on the surcharge, and the surcharge continued for the entire Plan year regardless.

52. Under this tobacco surcharge program, Plaintiff paid surcharges to Tenet in every year of his employment in order to maintain health insurance, something he could not go without. According to the Plan's own records, Plaintiff's medical premium deductions—inclusive of the tobacco surcharge, which the Plan combines with the medical premium in a single deduction—totaled $20,247.13 over his employment: $3,078.53 (2019), $4,488.38 (2020), $4,488.38 (2021), $5,430.88 (2022), and $2,760.96 (2023).

53. Only in its guide for the 2026 Plan year—published amid a nationwide wave of litigation challenging materially identical tobacco surcharge programs—did Tenet for the first time state that a participant who completes a tobacco cessation program "will have the opportunity to stop the surcharge and receive a refund of surcharges back to the effective date of benefits for the

current plan year." That eleventh-hour change concedes that a cessation-program alternative with retroactive relief was administratively feasible all along. It does not cure the violations during the Class Period, and even the 2026 disclosure omits the required waiver statement and physician-accommodation statement.[1]

54. Neither the Plan's formal plan document nor its more than 300-page summary plan description mentions the tobacco surcharge at all. The surcharge exists solely in enrollment guides and the enrollment system. *See Mueller*, 2026 U.S. Dist. LEXIS 164466, at *19-20 (a plan's summary plan descriptions must describe the wellness program and contain the required disclosure).

55. The varying descriptions of the surcharge across Tenet's materials—an undisclosed amount, an unitemized payroll deduction combined with participant medical premiums, and avoidance language that changes from year to year—cause confusion and lead to Plan participants being unable to make informed decisions.

56. During the Class Period, Defendants controlled the tobacco surcharge by determining which participants were charged and by withholding the tobacco surcharge from a participant's paycheck. On information and belief, rather than placing these funds in a trust account, Tenet retained the amounts collected as part of its own assets and used them to offset the cost of funding its self-insured medical program (although discovery is needed to confirm).

57. The Plan therefore charges tobacco users higher premiums than similarly situated participants who do not use tobacco, and fails to meet the safe harbor exception.

[1] At this time, Plaintiff lacks knowledge of how reimbursement, if any, has operated in practice following the 2026 Plan changes; discovery will be needed to determine whether and how any refund of surcharges has actually been administered.

## III. DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR FOR WELLNESS PROGRAMS.

### A. Lack of Reasonable Alternative Standard.

58. Defendants failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard: in this case, not having used any tobacco product within the applicable look-back period.

59. The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the full reward once they meet the alternative standard. To be clear, there must be a way for participants to avoid the surcharge for the full plan year, including retroactively once they complete the tobacco cessation program. *See Wilson*, 2026 U.S. Dist. LEXIS 10099, at *24 ("[T]o make available the 'full reward' to 'all similarly situated individuals,' a wellness program must provide retroactive reimbursements of all tobacco surcharges paid that Plan year.").

60. ERISA offers a limited exception to its general rules forbidding discrimination based on health status, by providing safe harbor for certain bona fide wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B).

61. This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor

provisions while charging participants additional surcharges is to offer programs designed to improve the participant's well-being such as a smoking cessation program. The regulations covering health-contingent wellness programs require that the wellness programs, like smoking cessation programs, satisfy certain criteria. *See* 78 Fed. Reg. 33158, 33159.

62. A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include.

63. To qualify under ERISA, wellness programs must meet three basic requirements: First, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; second, everyone in a similar situation must have a chance to earn the "full reward"—in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; third, the program must be disclosed "***in all plan materials***" describing the reward and explaining the availability of a reasonable alternative standard or waiver, and must also provide the ability to request an accommodation to the standard through one's personal physician. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

64. These regulations "set forth criteria for an affirmative defense that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under the [] nondiscrimination provisions." *See* Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33160 (June 3, 2013) (emphasis added).

65. Crucially, every one of the safe harbor requirements "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*

66. Defendants' tobacco surcharge program did not, at any time before the 2026 Plan year, satisfy the requirement to provide a reasonable alternative standard, and has never satisfied the requirement to provide compliant notice of a reasonable alternative standard. As a result, it cannot meet the elements of this affirmative defense.

67. Before the 2026 Plan year, Tenet's enrollment guides did not identify any tobacco cessation program at all as a means of avoiding the surcharge. Tenet's earlier guides told tobacco users only: "If you're ready to quit using tobacco, please contact your medical carrier to learn about resources."

68. Tenet's more recent guides tell tobacco users that "the Employee Assistance Program (EAP) can help" and that "[y]our medical plan may also offer tobacco cessation support," directing participants for details to a summary plan description. The referenced summary plan description says nothing about the surcharge and its only mention of a cessation program is a single sentence providing that "fees for smoking-cessation programs" are covered as "health care expenses."

69. Critically, no guide before the 2026 Plan year notified employees that participating in any program would relieve employees from the tobacco surcharge (either retroactively or prospectively). Cessation support was touted simply as an additional benefit offered by Tenet.

70. These vague references to quit-support resources are therefore not a "reasonable alternative standard" under the controlling statutes and regulations.

71. The guides are objectively insufficient to explain the process by which employees and their covered family members can avoid or remove the tobacco surcharge.

72. Indeed, the Plan itself appears to have no record that any alternative standard was ever offered or administered: when asked in writing in 2026 about Plaintiff's surcharge history,

the Plan's benefits personnel asked whether Plaintiff had "participated in a smoking cessation program." The Plan would have had this information if any such program had been offered to Plaintiff as a means of avoiding the surcharge. The Plan further confirmed that no refund or credit had ever been issued to Plaintiff.

73. Before the 2026 Plan year, participants who became tobacco-free partway through the plan year could not recover surcharges already paid in that Plan year; at most, beginning with the 2025 Plan year, they could prospectively "stop" the surcharge after remaining tobacco-free for three months. This practice violates ERISA's requirements that eligible participants must receive the "full reward."

74. Defendants, during the Class Period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue to be required to pay the surcharge. On information and belief, Defendants withhold the amount of the surcharge from participants' paychecks and deposit these funds into Tenet's own accounts, rather than into a trust account (although discovery is needed to confirm).

75. By depositing these ill-gotten gains into its own accounts, Tenet has dealt with assets of the Plan for its own interests, in violation of ERISA. Defendants have a fiduciary responsibility to ensure that these funds are used to support coverage for employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendants have increased Tenet's own bottom line, allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

76. Defendants' failure to adequately disclose this information in all Plan materials deprives employees of the ability to make informed decisions about their health and wellness

benefits and imposes an unlawful financial burden on employees who could otherwise meet the requirements of the alternative standard. Accordingly, the tobacco surcharge wellness program fails to comply with regulatory requirements to be a non-discriminatory wellness program under ERISA § 702.

77. Plaintiff did not complete a tobacco cessation program because he was not adequately notified of any such program. Had a tobacco cessation program been offered and disclosed as a means of avoiding the surcharge, Plaintiff would have enrolled in and completed it. Even if Plaintiff had received the necessary compliant notifications of the reasonable alternative standard (which he did not), he would not have received the full reward of being reimbursed the full tobacco surcharge for the entire Plan year as the regulations require.

78. Additionally, because, throughout the Class Period before the 2026 Plan year, the Plan failed to provide a compliant reasonable alternative standard that allows participants to receive the "full reward"—avoiding the surcharge for the entire plan year—Defendants' purported wellness program failed to provide any reasonable alternative standards and failed to comply with the requirement to make available the "full reward" to participants.

79. On this basis alone, the Plan violates ERISA's anti-discrimination provisions.

**B. Lack of Notice of Reasonable Alternative Standard.**

80. ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in all plan materials. Defendants' plan documents fail to communicate this option at all or—for the 2025 Plan year—only provide partial notice by specifying that quitting tobacco can stop the surcharge only prospectively, in violation of ERISA's notification requirements; and even the 2026 disclosure omits the required waiver statement and physician-accommodation statement.

81. The regulations require plans and issuers to "disclose ***in all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v) (emphasis added); *see also* 42 U.S.C. § 300gg-4(j)(3)(E).

82. Defendants do not include adequate notification in any Tenet Plan materials. As discussed above, the enrollment guides that describe the surcharge failed, before the 2026 Plan year, to notify participants of the availability of a reasonable alternative standard that would eliminate the tobacco surcharge for the entire plan year, in violation of ERISA, and have never—including in the 2026 guide—stated that the reasonable alternative standard can be met through accommodation of a personal physician recommendation.

83. Instead, through the 2024 Plan year the guides disclosed no way to avoid the surcharge other than not using tobacco, and for the 2025 Plan year, the only disclosed path was to be completely tobacco-free for three months and then report that status to "stop" the surcharge going forward.

84. Before the 2026 Plan year, no Tenet Plan materials informed employees that completing a program would entitle them to the full reward of avoiding the surcharge for the entire year, which discourages participation and violates ERISA's requirement that participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards.

85. Moreover, no Tenet Plan material provides any information that those standards may be waived or avoided by providing a personal physician recommendation.

86. Additionally, the regulations provide sample language for the notice a lawful wellness program must give. 29 C.F.R. § 2590.702(f)(6). Paragraph (f)(6) states:

> Your health plan is committed to helping you achieve your best health. Rewards for participating in a wellness program are available to all employees. If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means. Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status.

29 C.F.R. § 2590.702(f)(6).

87. Much of this language, including the ability to "earn the same reward by different means" and the fact that the Tenet Plan will "work with you . . . [and] with your doctor," is missing from the Plan's materials distributed to the Plan's participants.

88. "[A] plan disclosure that references a premium differential based on tobacco use . . . must include this disclosure." 78 Fed. Reg. 33158, 33166.

89. None of the Plan documents provided to Plaintiff or the Class in hardcopy or electronic form before the 2026 Plan year disclosed a means by which a participant could receive the "full reward" for the tobacco surcharge for the entire Plan year. None supplies any manner to waive the surcharge, including based on recommendations from an individual's personal physician. Nor do they present specific contact information for the person or persons who can assist with determining the availability of any reasonable alternative beyond quitting tobacco itself.

90. As a result, the Tenet Plan materials do not provide the notice of the scope and nature of any tobacco surcharge program that the wellness-program safe harbor requires be made available to employees.

91. Defendants failed to provide notice, in all Plan communications, of the availability and scope of a reasonable alternative standard, including accommodations recommended by the participant's personal physician, through which participants could avoid the tobacco surcharge and receive a full reward. The tobacco surcharge program is therefore unlawful, and the surcharge assessed to Plaintiff and the Class must be returned for the entire Class Period.

## CLASS ACTION ALLEGATIONS

92. 29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

93. 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary of the Plan to bring an action for statutory violations of ERISA for "appropriate equitable relief."

94. In acting in this representative capacity, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan who were subject to the unlawful Tenet tobacco surcharge. Plaintiff seeks to certify, and to be appointed as a representative of, the following Class:

> All persons in the United States who paid Tenet's tobacco surcharge in connection with the Tenet Employee Benefit Plan at any time from October 16, 2020, to the date of judgment.

95. Excluded from the Class are the Court and its officers, employees, and relatives; Tenet and its subsidiaries, officers, directors, the members of the Committee, and the Plan's fiduciaries; and governmental entities.

96. The Class includes thousands or tens of thousands of members and is so numerous that joinder of all members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

97. There are questions of law and fact common to this Class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary and other duties to the Plan and its participants and failed to take the actions alleged as to the Plan and as to any individual participant. Common questions of law and fact include, but are not limited to, the following:

a. Whether Tenet's tobacco surcharge discriminates against Plan participants based on a health status-related factor;

b. Whether Tenet's tobacco surcharge program qualifies for statutory safe harbor protection as a compliant wellness program;

c. Whether Defendants can meet every element of their statutory affirmative defense for operating a compliant wellness program;

d. Whether all of the Tenet Plan materials describing the tobacco surcharge gave notice of a reasonable alternative standard by which a plan participant may receive the full reward; and

e. Whether Defendants, in their discretionary fiduciary capacity of managing the Tenet Plan, breached their fiduciary duties with respect to the collection and retention of the tobacco surcharge.

98. Plaintiff's claims are typical of the claims of the pertinent class pursuant to Federal Rule of Civil Procedure 23(a)(3), because all class claims arise from the same course of conduct by Defendants—the collection of an unlawful tobacco surcharge—and are based on the same legal theories.

99. Plaintiff will adequately represent the Class pursuant to Federal Rule of Civil Procedure 23(a)(4), because he was a participant in the Plan during the Class Period, has no interests that conflict with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent lawyers.

100. Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (1) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants concerning the discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), and (2) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan which would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

101. Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

102. Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the Class.

## COUNT I
## ERISA Statutory Violation – Unlawful Surcharge
## ERISA Section 502(a)(3)
## Failure to Provide a Reasonable Alternative Standard Against Tenet

103. Plaintiff restates paragraphs 1-102 above as if fully set forth herein.

104. To enroll in the Tenet Plan's medical coverage, Plaintiff, Class members, and/or their covered spouses, domestic partners, and dependents who used tobacco were required to pay a tobacco surcharge in the amount of $25.00 per pay period—approximately $650 per Plan year.

105. Tenet's tobacco surcharge program is not and was not a permissible wellness program, because it did not provide for a reasonable alternative standard, in that:

a. The Tenet Plan did not allow participants a reasonable alternative means to avoid the tobacco surcharge by enrolling in a compliant smoking cessation program—indeed, before the 2026 Plan year, completing a cessation program did not remove or reduce the surcharge at all, whether prospectively or retroactively;

b. Even a former tobacco user who became tobacco-free would still have the surcharge deducted from their pay going forward—and, before the 2025 Plan year, for the remainder of the year with no disclosed path to stop it at all; and

c. Because a participant could not receive the "full reward," the plan did not provide for a reasonable alternative standard.

106. Tenet cannot and did not meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

107. Tenet, via its tobacco surcharge program, has discriminated against, and continues to discriminate against, Plan participants based on a health status-related factor and has assessed and continues to assess premiums or contributions, in violation of 29 U.S.C. § 1182(b).

108. 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiff and the Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

109. Plaintiff and the Class members were required to pay an illegal fee, and Tenet collected that fee from them in violation of the law. Equity requires that those funds be returned.

110. Equity also requires that the Tenet Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**COUNT II**
**ERISA Statutory Violation – Unlawful Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Give Required Notice Against Tenet**

111. Plaintiff restates paragraphs 1-102 above as if fully set forth herein.

112. To enroll in the Tenet Plan's medical coverage, Plaintiff and the Class members who used tobacco, or whose covered family members used tobacco, were required to pay a tobacco surcharge of $25.00 per pay period—approximately $650 per year.

113. Tenet's tobacco surcharge program is not and was not a permissible wellness program, because Tenet did not offer a reasonable alternative standard, and did not give the statutorily-required notice of the scope and nature of the reasonable alternative standard. None of the plan documents provided to Plaintiff or the Class members in hardcopy or electronic form supplied a fully compliant means by which a participant could receive the full retroactive reward for the tobacco surcharge for the plan year or provided a statement that recommendations of an individual's personal physician regarding their tobacco use would be accommodated.

114. Tenet therefore cannot meet every element of its affirmative defense for operating a lawful, compliant wellness program, and is therefore not entitled to statutory safe harbor protection.

115. Tenet, via its tobacco surcharge program, has discriminated against and continues to discriminate against Plan participants based on a health status-related factor. It has assessed and continues to assess premiums or contributions in violation of 29 U.S.C. § 1182(b).

116. 29 U.S.C. § 1182(b) is a statutory provision of ERISA that Plaintiff and the Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

117. Plaintiff and the Class members were required to pay an illegal surcharge, and Tenet collected that fee from them in violation of the law. Equity requires that those funds be returned to Plaintiff and the Class members.

118. Equity also requires that the Tenet Plan be operated in conformance with the statutory safe-harbor for wellness programs.

**COUNT III**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Loyalty Against Defendants**

119. Plaintiff restates paragraphs 1-102 above as if fully set forth herein.

120. At all times relevant to this lawsuit, the Committee was the administrator of the Tenet Plan within the meaning of 29 U.S.C. § 1002(16), and Tenet and the Committee were fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority and discretionary control respecting management of the Tenet Plan and disposition of its assets, including the funds collected from the tobacco surcharge, and had discretionary authority and discretionary responsibility in the administration of the Tenet Plan.

121. Defendants breached their fiduciary duties by assessing and collecting the tobacco surcharge in violation of the law, as the receipt of additional funds reduced Tenet's own costs associated with funding the self-insured Plan and forestalled its own obligations to make contributions thereto.

122. As a result of the imposition of the tobacco surcharge, Tenet enriched itself at the expense of the Class Members, thereby providing Tenet a windfall.

123. Defendants breached their fiduciary duties under ERISA in that they failed to act solely in the interest of the Tenet Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. *See* 29 U.S.C. § 1104(a)(1)(A).

124. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Defendants are liable to make good to the plan all losses to the plan resulting from their breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits acquired through the violations alleged herein and which were made through use of assets of the plan—along with such other equitable or remedial relief as is proper.

125. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**COUNT IV**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Breach of Duty of Prudence Against Defendants**

126. Plaintiff restates paragraphs 1-102 above as if fully set forth herein.

127. ERISA's duty of prudence requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…" 29 U.S.C. § 1104(a)(1)(B). A plaintiff states a prudence claim where the pleaded facts permit a reasonable inference that the fiduciary's process was flawed. *Seidner v. Kimberly-Clark Corp.*, No. 3:21-cv-867-L, 2023 U.S. Dist. LEXIS 54780, at *14 (N.D. Tex. Mar. 30, 2023).

128. Defendants breached their fiduciary duties by failing to conduct an adequate and thorough investigation regarding the assessment of a tobacco surcharge on Plaintiff and other Plan participants and beneficiaries.

129. Defendants failed to adequately investigate and assess the strict legal requirements necessary to impose a lawful nicotine / tobacco surcharge under ERISA and the PHSA.

130. These fiduciary violations caused injury to Plaintiff and other Plan participants and beneficiaries who were required to pay unlawful surcharges as a direct result of Defendants' imprudent and insufficient investigation and analytic process.

131. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Defendants are liable to make good to the plan all losses to the plan resulting from their breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan and/or a constructive trust all profits acquired through the violations alleged herein and which were made through use of assets of the Plan, and for such other equitable or remedial relief as is proper.

132. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

**COUNT V**
**ERISA Breach of Fiduciary Duty**
**ERISA Section 502(a)(2)**
**Failure to Monitor Fiduciaries Against Tenet**

133. Plaintiff restates paragraphs 1-102 above as if fully set forth herein.

134. At all times relevant to this lawsuit, Tenet, as the Plan's sponsor, appointed the members of the Committee, retained the authority to remove and replace those members, and exercised discretionary authority over the selection and retention of the Plan's fiduciaries. Tenet was therefore a fiduciary of the Plan with respect to those appointment and removal powers within the meaning of 29 U.S.C. § 1002(21)(A).

135. A fiduciary's duty to appoint carries with it a concomitant duty to monitor. Tenet was obligated to monitor the Committee and its members at reasonable intervals, in such a manner as may be reasonably expected to ensure that their performance complied with ERISA and the

terms of the Plan; to ensure that the Committee possessed and employed processes adequate to administer the Plan lawfully; and to take prompt and effective action to remedy fiduciary deficiencies, including removal and replacement of Committee members where necessary.

136. Tenet breached its duty to monitor by, among other things: (a) failing to monitor the Committee's administration of the tobacco surcharge program, which for years operated without any reasonable alternative standard, without the legally required notices, and without any mechanism to provide participants the full reward; (b) failing to ensure that the Committee employed any process to evaluate the program's compliance with ERISA § 702 and its implementing regulations; (c) failing to have any system in place for reviewing the participant communications that described the surcharge; and (d) failing to remove or remediate fiduciaries whose administration of the program violated ERISA.

137. Had Tenet discharged its monitoring duties prudently, it would have discovered that the tobacco surcharge program did not comply with ERISA's anti-discrimination provisions and the wellness-program regulations, and it would have required the Committee to bring the program into compliance or to cease collecting the surcharge.

138. As a direct and proximate result of these monitoring breaches, the Plan and its participants suffered losses, including the unlawful surcharges collected during the Class Period, and Tenet was unjustly enriched thereby.

139. As a result of these breaches, and pursuant to 29 U.S.C. § 1109, Tenet is liable to make good to the plan all losses to the plan resulting from its breaches, to disgorge all unjust enrichment and ill-gotten profits, and to restore to the plan and/or a constructive trust all profits it acquired through its violations alleged herein—along with such other equitable or remedial relief as is proper.

140. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C. § 1132(a)(2).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the Court enter judgment in his favor, both individually and on behalf of all participants and beneficiaries in the Tenet Plan, and award the following relief:

a. certifying a class action for Plaintiff's ERISA claims and appointing Chirinos Law Firm PLLC, Milberg PLLC, Stiegler Law Firm LLC, Bloom Legal LLC, and Kendall Law Group, PLLC, as Class counsel;

b. requiring Defendants to reimburse all participants who paid the tobacco surcharges from October 16, 2020 through the date of judgment plus interest;

c. requiring Defendants to revise any tobacco surcharge program they intend to maintain to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

d. enjoining Defendants from collecting tobacco surcharges until Defendants revise the tobacco surcharge program to comply with ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

e. imposing a constructive trust on profits received by Tenet as a result of fiduciary breaches committed by Defendants or for which they are liable, upon which Plaintiff and members of the Class can make claims for benefits;

f. requiring Defendants to disgorge all unjust enrichment or profits received as a result of fiduciary breaches committed with regard to the tobacco surcharge program for which they are liable;

g. ordering Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Tenet Plan and to plan participants and beneficiaries;

h. imposing the equitable remedy of surcharge and requiring Defendants to return all funds derived from the illegal tobacco surcharge program;

i. removing the fiduciaries who have breached their fiduciary duties and enjoining them from future ERISA violations;

j. awarding Plaintiff's counsel attorneys' fees and costs consistent with ERISA's fee- and cost-shifting provisions for the costs of prosecuting this action;

k. ordering the payment of interest to the extent it is allowed by law; and

l. granting any further relief that the Court may deem just and equitable.

Dated: October 16, 2026

Respectfully submitted,

*/s/ Joe Kendall*

Joe Kendall (Texas Bar No. 11260700)
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
214-744-3000 / 214-744-3015 (Facsimile)
jkendall@kendalllawgroup.com

Tulio D. Chirinos*
**CHIRINOS LAW FIRM PLLC**
20283 State Road 7, Suite 592
Boca Raton, Florida 33498
Tel.: (561) 299-6334
tchirinos@chirinoslawfirm.com

Alexandr Rudenco*
**MILBERG PLLC**
800 S. Gay St., Suite 1100
Knoxville, Tennessee 37929
Tel.: (865) 247-0080
arudenco@milberg.com

Charles J. Stiegler*
**STIEGLER LAW FIRM LLC**
318 Harrison Ave., #104
New Orleans, Louisiana 70124
Tel.: (504) 267-0777
charles@stieglerlawfirm.com

Seth J. Bloom (Texas Bar No. 24094426)
**BLOOM LEGAL LLC**
825 Girod Street, Suite A
New Orleans, Louisiana 70113
Tel.: (504) 599-9997
sjb@bloomlegal.com

* *Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff and the Proposed Class*